**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James E. Hunt, ) | No. CV07-0481-PHX-GMS |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| Northland Trucking, ) | |
| Defendant. ) | |

Pending before the Court are the Motions for Summary Judgment of both Plaintiff James E. Hunt and Defendant Northland Trucking. (Dkt. ## 50, 51.) For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## BACKGROUND

Plaintiff filed an Amended Complaint on March 30, 2007. (Dkt. # 5.) In his Amended Complaint, Plaintiff alleges that during his employment with Defendant he was discriminated against because of his race and was retaliated against after filing charges with the Equal Employment Opportunity Commission ("EEOC").

**I.     Discrimination Claims**

Plaintiff asserts three ways in which Defendant allegedly discriminated against him. First, Plaintiff, who is African-American, alleges that he was given less work than other similarly-situated employees. Plaintiff claims that despite adhering to informal company

1  policies regarding work distribution, he was passed over for load assignments. (Dkt. # 5 at
2  2.) For instance, Plaintiff claims that Defendant gave a lucrative load, which should have
3  gone to Plaintiff, to another driver and left Plaintiff with a markedly less profitable
4  assignment. (Dkt. # 5 at 4.) Defendant counters with evidence showing that its dispatchers
5  attempted to give loads to Plaintiff but that they were unable to reach him despite calling
6  three separate phone numbers given that Plaintiff had given to them. (Dkt. # 51 at 2.) For
7  the one example he does cite, not only does Plaintiff fail to submit any evidence
8  demonstrating that the more profitable load was rightfully his, but Plaintiff also fails to
9  submit evidence supporting his belief that race played a major role in the decision by the
10 dispatcher to give Plaintiff the less profitable load.

11  Second, Plaintiff argues that he was harmed when the actions of his employer caused
12 him to receive a traffic citation. According to Plaintiff, he was required by one of
13 Defendant's employees to move the tandems on his truck to a position that caused Plaintiff
14 to receive a citation for carrying an overweight load on a trip from California to Arizona.
15 (Dkt. # 5 at 3.) Plaintiff asserts that when he initially objected to the request, the employee
16 refused to let him leave with the load unless he moved the tandems as ordered. Plaintiff
17 claims that the employee further stated that Defendant would be responsible if Plaintiff
18 received a ticket. (*Id.*) Plaintiff asserts, however, that Defendant refused to pay the fine
19 when he received the citation. (*Id.*)

20  Defendant responds with evidence that its employee told Plaintiff that he needed to
21 move his tandems in order to make the load legal in California. (Dkt. # 51 at 7.) Defendant
22 submits an affidavit of John Kolb (the employee who requested Plaintiff move his tandems)
23 stating that, because of differences in vehicle weight laws between the states, Plaintiff said
24 he would change the position of his rear axle at the California/Arizona border in order to
25 make the load legal in Arizona. (*Id.*) Defendant further provided an employee handbook and
26 a handbook on federal safety regulations to Plaintiff, thereby putting him on notice of all
27 relevant laws and company policies regarding the responsibilities of Defendant's drivers.
28 (Dkt. # 51 at 1-2.) Defendant also states that when Plaintiff's truck was cited for being

1  overweight in August of 2005 (an incident separate from the ticket about which Plaintiff
2  complains), Defendant agreed to pay the fine associated with the citation.  (*Id.*)

3  Third, Plaintiff claims that he was verbally berated by Elmer Skoog, one of
4  Defendant's owners after delivering a load late.  Plaintiff asserts that he was given a
5  "crucial"[1] load to take from California to New York and that Defendant's actions caused the
6  load to arrive late.[2]  (Dkt. # 5 at 3.)  Plaintiff alleges that he received two insulting messages
7  from employees of Defendant, and that when he returned to Arizona, Skoog, "approached
8  [Plaintiff] in a very unprofessional manner yelling at [him] about the load," notwithstanding
9  Defendant's hand in causing the late delivery.  (*Id.*)  Plaintiff states that "[p]rior to this rude
10 encounter . . . [Plaintiff had] witness[ed] [Skoog] handling another Afro American driver in
11 the same way."  (*Id.*)

12 Defendant submitted two affidavits from minority employees, who assert that
13 Defendant "treat[s] all of the drivers the same way."  (Dkt. # 51 at 8-9.)  In one of those
14 affidavits Mr. Lonell Holt ("Holt"), the African-American driver who Plaintiff contends was
15 treated in a similar manner, asserts that he was yelled at by Skoog because he had ignored
16 a request from a dispatcher and had not performed his job correctly.  Holt states that Skoog
17 was justified in yelling at him and that the owner treats all drivers equally, regardless of race.
18 (Holt Aff. ¶¶ 6-9.)[3]

---

[1] Plaintiff implies that a "crucial" load is a term of art in the trucking industry denoting a load that *must* be delivered on time. (Dkt. #5 at 3.)

[2] Plaintiff does not claim that the actions of Defendant that resulted in the delivery being late were discriminatory.

[3] Plaintiff takes issue with the assertion that one of these employees, Mr. Ali, is African-American, noting that the fact that Mr. Ali is Muslim, without more, does not make him "black." (Dkt. # 53 at 4-5.)  However, Mr. Ali states under oath in his affidavit that he is African-American, and Plaintiff does not attempt to refute this.

- 3 -

## II. Retaliation Claims

Plaintiff eventually filed charges of discrimination with the EEOC. As best the Court can determine, Plaintiff alleges that he was thereafter retaliated against in two ways. First, Plaintiff claims that Defendant's employee failed to secure a 42,000 pound load of copper assigned to Plaintiff. (Dkt. # 5 at 4.) According to Plaintiff, the copper was inside a sealed container, and thus he had no opportunity to inspect the condition of the load. Plaintiff contends that when he was passing through a mountainous stretch of the journey he "had a feeling something wasn't right because while driving around a curve in the mountains the trailor [sic] would lift." (*Id.*) At a scale in Banning, California, the seal on the trailer was broken off by inspectors and it was revealed that the copper Plaintiff was hauling was sliding around because it had not been secured. (*Id.*) Plaintiff claims that the copper was not secured in "an attempt to cause death or harm" to him. (*Id.*) Plaintiff, however, does not submit any evidence indicating that Defendant's employees either prepared the load or were aware of the EEOC claim by Plaintiff.

Second, Plaintiff claims that he was fired because he filed a second action with the EEOC, this one for retaliation, "due to all the measures taken against" him by Defendant. (Dkt. # 5 at 5.) Defendant asserts that Mr. Hunt's employment was terminated solely because Defendant found out that Mr. Hunt had been operating a commercial vehicle on a suspended license for nearly two months. (Dkt. # 51 at 6.) It was this lack of qualification, according to Defendant, that caused Plaintiff's termination. Defendant points out that Plaintiff was aware of the fact that he was "not qualified to perform his duties as a driver after his license was suspended." (Dkt. # 51 at 6.) Defendant also states that Plaintiff failed to present any evidence that would lead the Court to believe that Plaintiff's termination was in retaliation for his EEOC complaint.

## DISCUSSION

Plaintiff and Defendant have both filed Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In case of a Rule 56 motion, a party seeking summary judgment "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will address Defendant's motion first.

**I.     Defendant's Motion for Summary Judgment**

   **A.     Discrimination Claims**

As set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and interpreted by *Chuang v. University of California-Davis*, 225 F.3d 1115 (9th Cir. 2000), there are four requirements a plaintiff must satisfy in order to establish a prima facie case of racial discrimination. "[T]he plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang*, 225 F.3d at 1123. In establishing a prima facie case of racial discrimination, "[t]he requisite degree of proof necessary . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). If the plaintiff is able to establish a prima facie case the "burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123-24. Once the defendant has forwarded a nondiscriminatory explanation for the challenged action, the plaintiff must be "afforded a fair opportunity to show that [the] stated reason for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.

1         The definition of an adverse employment action is particularly important here.  The
2 Ninth Circuit broadly construes adverse employment actions, holding that "a wide array of
3 disadvantageous changes in the workplace" can constitute adverse employment actions.  *Ray*
4 *v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Termination, negative employment
5 references, undeserved negative performance reviews, and denial of promotions qualify as
6 adverse employment actions.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.
7 2000).  However, "not every employment decision amounts to an adverse employment
8 action."  *Id.*; *see also Vasquez v. County of Los Angeles,* 349 F.3d 634, 651 (9th Cir. 2003).
9 "[M]ere inconveniences or an alteration of job responsibilities do not qualify."  *Sanchez v.*
10 *Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998); *see also Kortan v. State of Cal.*, 5 F.
11 Supp. 2d 843, 853 (C.D. Cal 1998) (holding that neither verbal disparagement, low
12 performance rating, denial of a request for a change of supervisor, nor denial of a transfer
13 amount to an adverse employment action).

14         Plaintiff has failed to make a prima facie showing of racial discrimination.  Plaintiff
15 has failed to file any affidavits or otherwise produce any evidence in support of or opposition
16 to the motions for summary judgment.  Even if the Court were to accept mere allegations as
17 facts, Plaintiff fails to rebut Defendant's legitimate, non-discriminatory explanations for its
18 actions.

19         As to Plaintiff's first discrimination claim, even if Plaintiff were receiving less work
20 than other employees, and even if Defendant requested that Plaintiff relay a short load on the
21 single occasion Plaintiff notes, Defendant has submitted a legitimate, non-discriminatory
22 reason for Plaintiff's assignments or lack thereof.  Affidavits submitted by Defendant show
23 that Defendant was often unable to contact Plaintiff in order to give him work and that when
24 Defendant did get in touch with Plaintiff and assigned him loads, Plaintiff was often
25 unreliable.  Defendant also demonstrates that its decisions as to whom it assigns work are
26 based on a variety of factors, including driver availability and reliability.  Plaintiff does not
27 rebut Defendant's legitimate explanation with any showing of pretext, and thus he cannot
28 defeat Northland's request for summary judgment.

Second, the act of Defendant's employee in requesting that Plaintiff equip his truck in a particular manner, and thereafter to "stretch out" his axle at the Arizona border crossing, was not an adverse employment action. The need for Plaintiff to stretch out his axle was at most a "mere inconvenience" because it would have required that he take the time at the border to adjust his load. The Court finds this situation analogous to the situation in *Sanchez*, in which, because of a job transfer, the plaintiff's travel time from home to work increased "from between five and seven minutes [before the transfer] to between thirty and forty minutes [after the transfer]." 164 F.3d at 532. In that case, the Tenth Circuit held the act to be nothing "beyond a mere inconvenience or alteration of job responsibilities." *Id.*[4] As in *Sanchez*, the inconvenience here did not rise to the level of an adverse employment action. Alternatively, Defendant has clearly demonstrated a legitimate, non-discriminatory explanation for its decision by stating that it required its drivers to abide by state laws. Plaintiff has not rebutted this explanation as pretext and therefore cannot prevail.

Nor is Defendant's refusal to pay for the overweight citation an adverse employment action. Even though it is uncontested that Defendant paid the fine associated with a ticket that Plaintiff had previously received, the Court cannot find that the failure to repeat this act constitutes an adverse employment action. The refusal to pay a ticket for Plaintiff did not "affect employment or alter the conditions of the workplace" as the Supreme Court held is required in discrimination claims. *Burlington N. and Santa Fe Ry. Co v. White*, 548 U.S. 53, 62 (2006). It is also not among the types of actions held to be adverse by the Ninth Circuit. *See Brooks*, 229 F.3d at 928. Alternatively, Defendant has provided a non-discriminatory explanation as to why it did not pay the ticket by showing that the company policy laid out in the employee handbook makes employees liable for the citations they receive. Because

---

[4]Although *Sanchez* is a Tenth Circuit case, the Court finds that its reasoning applies here. As the Ninth Circuit held in *Ray*, the Ninth Circuit is "in accord with the . . . Tenth . . . Circuit[]" because both Circuits "take an expansive view of the type of actions that can be considered adverse employment actions." 217 F.3d at 1241.

1 Plaintiff has not rebutted this explanation as a pretext for racial discrimination, Defendant
2 prevails.

3 Third, the fact that Plaintiff was yelled at after delivering a load late matches up, at
4 most, with the verbal disparagement in *Kortan* that was held to not be an adverse
5 employment action. Even if the confrontation met the minimal standard of proof that the
6 Ninth Circuit requires, Defendant has offered a legitimate, non-discriminatory explanation
7 for the action that Plaintiff has been unable to refute as pretext. As Defendant's evidence
8 demonstrates, at least one other African-American driver was yelled at in a similar manner,
9 and the evidence shows that the confrontation in both cases was based on Skoog's perception
10 of poor work performance, not race. Because Plaintiff has been unable to refute Mr. Skoog's
11 explanation as being a pretext Defendant prevails on this issue.

12 **B.    Retaliation Claims**

13 To prevail in a retaliation claim, Plaintiff must first establish a "prima facie case of
14 retaliation by showing that [Plaintiff] engaged in a protected activity, that [Plaintiff] was
15 thereafter subjected to adverse employment action by [Defendant], and that there was a
16 causal link between the two." *Wrighten v. Metro. Hosp., Inc.*, 726 F.2d 1346, 1354 (9th Cir.
17 1984). As in a racial discrimination claim, the burden then shifts to the defendant to show
18 "by a preponderance of the evidence that the adverse action would have been taken even in
19 the absence of discriminatory intent." *Id*. By using a preponderance of the evidence
20 standard, this Court is instructed to, "[i]n short, [] decide which party's explanation of the
21 employer's motivation it believes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S.
22 711, 716 (1983). Finally, the burden then shifts back to the plaintiff to show that the
23 explanation is pretextual. This can be achieved by either directly "persuading the court that
24 a discriminatory reason more likely motivated the employer or indirectly by showing that the
25 employer's proffered explanation is unworthy of credence." *Tex. Dept. of Cmty. Affairs v.*
26 *Burdine*, 450 U.S. 248, 256 (1981).

27 As to Plaintiff's first retaliation claim, while Plaintiff may believe that Defendant gave
28 him an unsecured load in an attempt to cause him harm, there is no evidence offered by

- 8 -

1  Plaintiff to permit the Court to conclude that a causal relationship exists between Plaintiff's
2  EEOC claim and his receipt of an unsecured load.  In order to establish the causal
3  relationship, "[Plaintiff] must present evidence from which a reasonable trier of fact could
4  conclude that [Defendant's employees] . . . were aware that [he] had engaged in protected
5  activity" by filing an EEOC claim. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d
6  1185, 1197 (9th Cir. 2003), *see also Cohen v. Fred Meyer Inc.*, 686 F.2d 793, 796 (9th Cir.
7  1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff
8  had engaged in the protected activity[.]"); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th
9  Cir. 2004) (holding that because the defendant "must have had actual knowledge of the
10 complaints for [its] decisions to be retaliatory," plaintiff must "[a]t a minimum . . . offer
11 evidence that would support a reasonable inference that [Defendant] was aware of
12 [Plaintiff's] allegations of discrimination").  There is no evidence in the record, nor does
13 Plaintiff argue, that Defendant's employees were aware of his EEOC charge.  Because
14 Plaintiff cannot establish this necessary predicate, summary judgment is appropriate.[5]

15  Finally, while the termination of Plaintiff's employment is clearly an adverse
16 employment action, Plaintiff has not rebutted Defendant's legitimate explanation as to why
17 it fired Defendant.  When Plaintiff was fired he had been operating his truck on a suspended
18 license for two months.  Even Plaintiff admitted that he was no longer qualified to perform
19 his duties as a truck driver when he was fired.  Because Plaintiff does not show that this
20 rationale was only a pretext, Defendant prevails on this issue as well.[6]

---

[5] It is unclear whether Plaintiff intends to assert this as evidence of discrimination as well.  However, to the extent that he does, summary judgment is still appropriate, for Plaintiff has adduced no evidence that Northland prepared the load. (Dkt. # 52 at 24.)

[6] While Plaintiff claimed that he believed that he was forced to relay a load a short distance on account of his race, as opposed to in retaliation for his EEOC claim, the Court will also address the issue here because the event occurred after Plaintiff filed the EEOC claim.  To the extent that Plaintiff is making a retaliation claim on this ground, Plaintiff is unable to establish a prima facie case because Plaintiff does not show that the employer was aware at the time that Plaintiff had filed an EEOC claim.  Also, Plaintiff has failed to show any causal relationship between his EEOC claim and the fact that he was given a shorter

For these reasons, Defendant's Motion for Summary Judgment must be granted.

## II. Plaintiff's Motion for Summary Judgment

For the same reason that Defendant's Motion for Summary Judgment must be granted, Plaintiff's motion must be denied. There is no genuine issue of material fact as to whether Defendant engaged in discrimination or retaliation. Plaintiff's motion must also be denied because he failed to submit any affidavits or statement of facts that raise *any* factual claims, let alone evidence to support those claims. Finally, the Court notes that Plaintiff has failed to comply with a number of local rules, and thus his motion is not properly before the Court in any event. *See* LRCiv 56.1.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 51) is **GRANTED**.

/ / /

/ / /

---

distance to travel. Plaintiff offers no evidence that he was given the short load because of his EEOC claim, and the Court is unable to construct such an inference based on the evidence. Therefore, Plaintiff has not established a prima facie case of retaliation in regards to being asked to relay a short load.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this action.

DATED this 22nd day of December, 2008.

*G. Murray Snow*
United States District Judge

- 11 -